## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**IMIRAH SHANTE POLK o/b/o E.A.W.,**                    **CIVIL ACTION**

**VERSUS**                                              **NO:        17-8167**

**NANCY A. BERRYHILL, ACTING**                          **SECTION: "G" (4)**
**SOCIAL SECURITY ADMINISTRATION**

### REPORT AND RECOMMENDATION

### I.    Introduction

This is an action for judicial review of a final decision of the Commissioner of Social Security pursuant to **42 U.S.C. § 405(g)**.  Imirah Shante Polk ("Polk") brought this action on behalf of her child, E.A.W., (hereinafter "E.W.") pursuant to 42 U.S. C. § 405g, for review of a final administrative decision of the Commissioner, denying an application for supplemental security income (SSI) 42 U.S.C. § 1382(c).

The matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 19.02E(b) for submission of Proposed Findings and Recommendations.

### II.   Factual Summary

The claimant, Imirah Shante Polk, filed this appeal on behalf of her minor son, E.A.W., a three-year-old child who was born prematurely and suffered two interventricular hemorrhages. According to his mother, E.W. experienced developmental delays as a result of his premature births. (Tr. 70-76).   E.W. was two months old at the time the application for benefits was filed. (Tr. 70).

Polk filed the application for benefits on March 13, 2015, and the application was denied on March 13, 2015. (Tr. 69, 76).   On May 29, 2015 Polk filed a request for a hearing, which took

place before Administrative Law Judge ("ALJ") Christopher H. Judge on March 15, 2016 (Tr. 57-76).

On June 2, 2016, the ALJ concluded that E.W. was not disabled under the Social Security Act.   (Finding 6, Tr. 25).   He found that E.W. suffered from status post hydrocephaly with shunt repair, estropia with surgical correction, status post low birth weight (resolved) medically determinable, "severe" impairments. (Finding 4, Tr. 14).   However, he found that E.W.'s impairments neither singly, nor in combination, met or equaled the criteria of any of the listed impairments at 20 C.F.R. § 404. Supbpt. P., app.1.   (Findings 4 & 5, Tr. 14).   Polk sought review of the decision. (Tr. 32).

Polk contends that the ALJ erred when he failed to conclude that E.W.'s developmental delay caused more than minimal limitations on his ability to function.   (Tr. 12-15) Specifically, Polk alleges that the ALJ's decision is not based upon substantial evidence because he failed to find that E.W. has two marked limitations in the childhood functioning domains.   (Tr. 16).

The Commissioner contends that the ALJ's determination that E..W. did not have marked limitations in the domains of "interacting and relating with others" and "health and physical well-being" is based upon substantial evidence.   (Tr. 17).

**III.    <u>Standard of Review</u>**

      **A.    <u>Statutory and Regulatory Framework</u>**

The Social Security Act provides that a child under 18 is "disabled" for purposes of SSI eligibility if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less *than 12 months."*   42 U.S.

C. § 1382c(a)(3)(C)(I).

The Commissioner follows a three step process in determining childhood disabilities.  *See* 20 C.F.R. § 416.924 (2004).   A child qualifies for SSI benefits if the Commissioner determines that (1) the child is not engaged in substantial gainful activity; (2) the child has a medically determinable severe impairment; and (3) the impairment meets, medically equals, or functionally equals the severity of an impairment listed at 20 C.F.R. § 404. Supbpt.P., app.1 (" listed impairment(s)") and meets the durational requirement.

**B.    Judicial Review**

The role of this Court on judicial review under 42 U.S.C. § 405(g) is limited to determining whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards when evaluating the evidence.  *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).   The Court cannot re-weigh the evidence, try issues *de novo* or substitute its judgment for that of the Secretary.  *Allen v. Schweitker*, 642 F.2d 799, 800 (5th Cir. 1981).   If supported by substantial evidence, the Secretary's findings are conclusive and must be affirmed.  *Richardson v. Perales*, 402 U.S. 389 (1971); *see also Wilkinson v. Schweiker*, 640 F.2d 743, 744 (5th Cir. 1981).

"Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion.   It is more than a mere scintilla and less than a preponderance."  *Ripley v. Chater,* 67 F.3d 552, 555 (5th Cir. 1995).   It must do more than create a suspicion of the existence of the fact to be established.  *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973).   A single piece of evidence will not satisfy the substantiality test if the ALJ ignores, or fails to resolve, a conflict created by countervailing

3

evidence. Evidence is not substantial if it is overwhelmed by other evidence, particularly evidence offered by treating physicians. *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).

Finally, the Court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnosis and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) age, education, and work history." *Hendricks v. Apfel*, No. 99-1212, 2000 WL 174884, at *3 (E.D. La. Feb. 14, 2000)(citing *Martiniez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)).

**IV.**   **Analysis**

    **A.**   **EW's alleged developmental delay is not a "severe" impairment.**

Polk contends that the ALJ's decision that her son E.W.'s alleged developmental delay is not a "severe" impairment is not based upon substantial evidence. Polk alleges that her son was born premature, suffered two interventricular hemorrhages which caused developmental delays and continues to receive bi-weekly therapy sessions and other treatment. (Rec. doc. 16.) As a result, Polk contends that the ALJ failed to find that EW's developmental delays caused more than minimal limitations on his ability to function. *Id.*

The Commissioner contends that the ALJ's determination that E.W.'s developmental delay is not a "severe" impairment is based upon substantial evidence. (Rec. doc. 17.) The Commissioner contends that the ALJ's finding that E.W.'s developmental delay is not a "severe" impairment should be affirmed.

A severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). A literal application of these regulations is inconsistent with

the Act, however, because the definition includes fewer conditions than indicated by statute. See Stone, 752 F.2d at 1104–05. Therefore, the Court of Appeals for the Fifth Circuit has held that an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Id*. at 1101, 1104–05. In other words, the Stone standard does not allow for any interference with the claimant's ability to work. *Sweeney v. Astrue*, 2010 WL 6792819 at *5 (N.D.Tex.2010).

The ALJ found that E.W's shunt repair, estropia and low birth weight were severe impairments.  (Finding 3, Tr.13)   The ALJ also noted that E.W. experienced transitory conditions including diaper rash and anemia but that they did not result in more than minimal functional limitations and are "non-severe." (*Id.* 13.)   The ALJ also found that while E.W. had a seizure on one day that there was no objective testing to confirm the presence of a seizure disorder and no diagnosis of a seizure disorder was made. (*Id.* 14).

While Polk contends that E.W. suffers from developmental delay, there is no evidence in the record to support the finding.   Polk does suggest that there is evidence of developmental delay in the record.   Although not expressly state, it appears that Polk is suggesting that the ALJ did not not consider evidence of E.W.'s developmental delay.   According to the record, developmental delay was suspected in the adaptive area on June 26, 2015. (Tr. 543)   The record indicates that upon being discharged from the Neonatal Intensive Care Unit, E.W. was supposed to be evaluated for developmental delays and that it was to be conducted by the Early Steps and Developmental Clinic. (Tr. 545). However, the Early Steps' evaluation does not indicate that E. W. was developmentally delayed.  (Rec. doc. 15-10, Tr. 563.)   The Court, therefore finds that the ALJ's

5

assessment of E.W. severe impairments is based upon substantial evidence.

**B.  ALJ's Limitation Finding**

Polk contends that her son is disabled because he has at least two marked limitations in the childhood functioning domains. *Id.*   The first domain according to Polk is that her son scored 2.33 standard deviations below the mean in the area of Social and Emotional-Domain. *Id.*   Polk also contends that the ALJ erred when he failed to find that her son had marked limitations in the area of health and well- being.   Polk believes that four to five appointments a month qualifies as an illness as defined in the regulations.

The Commissioner further contends that the ALJ's finding that E W. did not have marked limitations in the domains of "interacting and relating with others" and health and physical well-being is based upon substantial evidence. Therefore, according to the Commissioner the ALJ's limitation finding should be affirmed.

In determining whether the functional limitations caused by the child's impairments are functionally equivalent to those imposed by a listed impairment, the Commissioner applies four methods. 20 C.F.R. § 416.926a (b).   The first method requires the Commissioner to consider the limitation of specific functions, such as walking or talking, to determine if there is an extreme limitation of one specific function. 20 C.F.R. § 416.926a (b)(1).

For children from birth to age three, extreme limitation means functioning at one-half chronological age or less, or no meaningful functioning in a given area. 20 C.F.R. §§ 416.926a(c)(3)(ii)(B) and (C). The second method requires the Commissioner to evaluate the effect of the child's impairment in broad areas of development or functioning that include communication, motor skills, and social relationships. 20 C.F.R. § 416.926a(b)(2). If the child has

extreme limitations in one area of functioning or marked limitation in two areas of functioning, he or she will be considered disabled. *Id*.

For children between the ages of one and three years, marked limitations means a standardized test score that is two standard deviations or more below the norm for the test, or functioning at more than one-half but not more than two-thirds of chronological age. 20 C.F.R. § 416.926a(c)(3)(i). For children in this age group, the Commissioner evaluates development in the areas of cognition/communication, motor skills, and social skills. 20 C.F.R. §§ 416.926a(c)(4)(i)-(iii) and (5)(ii).

Under the third method, the Commissioner evaluates episodic impairments, by considering the effect of frequent illnesses, attacks, or exacerbations on functional limitations. 20 C.F.R. § 416.926a (b)(3). Alternatively, this method allows the Commissioner to compare the child's functional limitations to those of any chronic listed impairment with similar episodic criteria. *Id*. The fourth method evaluates functional limitations related to treatment or medication effects, or compares the child's limitations to the criteria in the Listing of Impairments to determine if the treatment itself is disabling or contributes to functional limitations. 20 C.F.R. § 416.926a (b)(4).

### 1.   Social/Emotional Behavior Domaine

The medical errors from early steps evaluation found that in the social/emotional behavioral domain that E.W. domain score was 2.33 standard deviations below the mean.  (Rec. doc. 15-10, Tr. 564).   At the time of this evaluation, E.W. was three months old. (Tr. 385)   It was was also noted at this time that E. W. demonstrated delays in his adaptive and motor demands. (Rec. doc. 15-8, Tr. 387).  It was noted that he was able to make different cries as a form of expression and that he understood his parents' voices and was soothed by his caretakers' voices.

(*Id*. Tr. 388). During his eleven month visit, E.W., according to his mother, was eating from a spoon but would occasionally throw himself backwards while eating.  She indicated that he was alert and interactive.  The nurse noted that he threw himself back while in the office that day. (Rec. doc. 15-10, Tr. 628).  It was noted in the screening summary that E.W. was ready to learn, had no barriers to his ability to learn and the noted learning preferences were by demonstration, written materials and verbal explanations.  *Id.*, Tr. 630.  On physical examination, E.W. was noted to "look good, calm and happy" and his behavior was appropriate for his age.  (*Id.* Tr. 633-634.)

E.W. appear with his father for a well child check up on January 15, 2016 when he was ten months old.  (*Id.*, Tr. 635).  It was noted that he slept through the night and ate a good variety of foods.  (*Id.*, Tr. 635).  He was noted to have good head control and cooed interactively with his father. *Id.*  After the initial assessment, the record indicates that E.W.'s social interactions improved.  As a result, the ALJ's finding—which did not include developmental delay as a severe impairment—is based upon substantial evidence.

### 2. Health and physical well-being domain.

Polk also contends that the ALJ erred when he failed to find that he had marked limitations in the area of health and well-being because she believes that four to five appointments a month qualifies as illness as defined in the regulations.   Polk, therefore, contends that the ALJ's decision is not based upon substantial evidence.

The Commissioner contends that the ALJ's decision regarding the health and physical well-being assessment is based upon substantial evidence.   The Commissioner therefore contends that the ALJ's decision should be affirmed.

In considering whether a child has a "marked" limitation in the health and physical well-being domain,[1] the SSA will also consider whether the child experiences episodes or exacerbations of an illness frequently. 20 C.F.R. § 416.926a(e)(2)(iv). "Frequently" is defined as (1) an average of every four months, each episode or exacerbation lasting at least two weeks; (2) an average less than every four months, each lasting more than two weeks; or (3) an average greater than every four months, each lasting less than two weeks. *Id.*

The ALJ noted that E.W. had less than marked limitation in health and physical well-being. In so doing, he noted his low birth weight, which resolved. The ALJ proceeded to note the surgery for estropia and that on physical examination he was described as normal. (Rec. doc. 15-2, Tr. 24.)

The Court notes that according to Polk, E.W had 4-5 appointments a month due to his impairments. There is no citation to the record noting the appointments. Further, the Court notes notes that the appointments should consist of episodes or exacerbation of an illness over periods of time. Appointments alone are insufficient to satisfy the regulations. In fact, the record shows that E.W.'s therapy treatments improved his functioning. The record does not show a decline in health but rather an improvement. The Court therefore finds that the ALJ's finding that E.W. in the health and physical well-being domain is moderately impaired but not markedly impaired.

## V.    <u>Recommendation</u>

It is the **RECOMMENDED** that the ALJ's decision denying Imirah Shante Polk o/b/o E.A.W. application for Supplemental Security Income Benefits be **AFFIRMED.**

---

[1] The health and physical well-being domain considers the cumulative physical effects of the child's physical or mental impairments and their associated treatments or therapies on the child's health. 20 C.F.R. § 416.926a(l).

9

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[2]

New Orleans, Louisiana, this 6th day of November 2018.

_____

**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[2] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

10