UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IMIRAH SHANTE POLK o/b/o E.A.W.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-8167** |
| **NANCY BERRYHILL, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION** | **SECTION: "G"(2)** |

## ORDER AND REASONS

Before the Court are Plaintiff Imirah Shante Polk's ("Plaintiff") objections[1] to the Report and Recommendation of the United States Magistrate Judge assigned to the case.[2] Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of Defendant, the Acting Commissioner of the Social Security Administration (the "Commissioner" or "Defendant"), denying her claim on behalf of her son, E.A.W., for supplemental security income ("SSI") under the Social Security Act (the "Act").[3] The Magistrate Judge recommended that the Administrative Law Judge's ("ALJ") decision denying SSI benefits be affirmed.[4] Plaintiff objects, arguing that the ALJ's decision should be reversed because E.A.W.'s developmental delay qualifies as a serious impairment.[5] Having considered Plaintiff's objections, the Magistrate Judge's Report and Recommendation, the record, and the applicable law, for the following reasons, the Court will sustain Plaintiff's objections in part, reject the Magistrate Judge's Report and Recommendation in

---

[1] Rec. Doc. 22.

[2] Rec. Doc. 19.

[3] Rec. Doc. 1.

[4] Rec. Doc. 19 at 10.

[5] Rec. Doc. 22.

part, adopt the Magistrate Judge's Report and Recommendation, affirm the ALJ's decision denying Plaintiff's application for SSI benefits on behalf of E.A.W., and dismiss this action with prejudice.

## I. Background

### A. *Procedural History*

Plaintiff filed an application for SSI on behalf of her minor child, E.A.W., on April 3, 2015, alleging that E.A.W. experienced developmental delays due to his premature birth on February 26, 2015.[6] After Plaintiff's claim was denied at the agency level, Plaintiff requested a hearing before an ALJ, which was held on March 15, 2016.[7] Plaintiff testified at the hearing.[8]

The ALJ analyzed Plaintiff's claim pursuant to the three-step sequential evaluation process used to determine whether an individual under the age of 18 is disabled.[9] At step one, the ALJ found that E.A.W. had not engaged in substantial gainful activity since April 3, 2015, the application date.[10] At step two, the ALJ determined that E.A.W. has the following severe impairments: "status post hydrocephaly with shunt repair, estropia with surgical correction, status post low birth weight (resolved)."[11] The ALJ also noted that E.A.W. experienced transitory

---

[6] Adm. Rec. at 70.

[7] *Id.* at 57–66.

[8] *Id*.

[9] "For a child to be disabled under the meaning of the Act, the child must: (1) not be engaged in substantial gainful activity; (2) have an impairment that is 'severe'; and (3) have an impairment that 'meets, medically equals, or functionally equals' the impairments listed in the disability regulations." *Richard ex rel. Z.N.F. v. Astrue*, 480 F. App'x 773, 776 (citing 20 C.F.R. § 416.924(a)–(d)).

[10] Adm. Rec. at 13.

[11] *Id.*

2

conditions including diaper rash and anemia, but that these conditions did not result in more than minimal functional limitations and were therefore "non-severe."[12] The ALJ also found that while E.A.W. had a seizure on one occasion there was no objective testing to confirm the presence of a seizure disorder and no diagnosis of a seizure disorder was made.[13]

At step three, the ALJ held that E.A.W. does not have an impairment or combination of impairments that meets or medically equals the severity of the impairment listed at 20 C.F.R. § 404. Supbpt. P., Appendix 1.[14] At step three, the ALJ also considered six functional equivalence domains and determined that E.A.W. did not have an impairment or combination of impairments that functionally equals the severity of the listing.[15] The ALJ determined that E.A.W. had no limitations in the following domains: (1) acquiring and using information;[16] (2) attending and completing tasks;[17] (3) interacting and relating with others;[18] (4) moving about and manipulating objects;[19] and (5) caring for himself.[20] Finally, the ALJ found that E.A.W. had "less than marked"

---

[12] *Id.*

[13] *Id.*

[14] *Id.* at 14.

[15] *Id.*

[16] *Id.* at 19–20.

[17] *Id.* at 20–21.

[18] *Id.* at 21–22.

[19] *Id.* at 22–23.

[20] *Id.* at 23–24.

limitations in the health and physical well-being domain.[21] Therefore, the ALJ concluded that E.A.W. was not disabled as defined by the Act.[22]

Plaintiff requested review by the Appeals Council. The ALJ's decision became the final decision of the Commissioner for purposes of this Court's review after the Appeals Council denied review on June 19, 2017.[23] On August 23, 2017, Plaintiff filed a complaint seeking judicial review pursuant to Section 405(g) of the Act.[24] This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2(B). On February 14, 2018, the Commissioner answered the Complaint.[25]

On March 26, 2018, Plaintiff filed a memorandum arguing that the ALJ erred in failing to consider E.A.W.'s developmental delays a serious impairment.[26] Furthermore, Plaintiff argued that E.A.W. had marked impairments in the domains of "interacting and relating with others" and "health and physical well-being."[27] On May 9, 2018, the Commissioner filed a memorandum arguing that E.A.W.'s developmental delays are not a serious impairment and that substantial evidence supports the ALJ's determination that E.A.W. did not have marked limitations in the domains of "interacting and relating with others" and "health and physical well-being."[28]

---

[21] *Id.* at 24.

[22] *Id.* at 25.

[23] *Id*. at 1–6.

[24] Rec. Doc. 1.

[25] Rec. Doc. 14.

[26] Rec. Doc. 16 at 1.

[27] *Id.* at 2–3.

[28] Rec. Doc. 17.

4

**B.      *The Magistrate Judge's Findings and Recommendation***

On November 6, 2018, the Magistrate Judge recommended that this Court affirm the ALJ's decision denying Plaintiff's application for SSI on behalf of E.A.W.[29] The Magistrate Judge found that the there was no evidence in the record to support Plaintiff's contention that E.A.W. suffers from developmental delay.[30] The Magistrate Judge noted that developmental delay was suspected in the adaptive area on June 26, 2015,[31] but the Early Steps and Developmental Clinic's evaluation of E.A.W. indicated that he was not developmentally delayed.[32] Therefore, the Magistrate Judge determined that the ALJ's assessment of E.A.W.'s severe impairments was based on substantial evidence.[33]

The Magistrate Judge also found Plaintiff's argument that the ALJ should have found marked limitations in two childhood functioning domains unavailing.[34] With respect to the domain of "interacting and relating to others," the Magistrate Judge noted that the medical records showed that when E.A.W. was three months old his domain score was 2.33 standard deviations below the mean and E.A.W. demonstrated delays in adaptive and motor demands.[35] However, the Magistrate

---

[29] Rec. Doc. 19 at 9.

[30] *Id*. at 5.

[31] *Id*. (citing Adm. Rec. at 543).

[32] *Id*. (citing Adm. Rec. at 563).

[33] *Id*. at 5–6.

[34] *Id*. at 6–9.

[35] *Id*. at 7 (citing Adm. Rec. at 564, 387).

5

Judge found that later records revealed that E.A.W.'s social interactions improved.[36] Therefore, the Magistrate Judge found that substantial evidence supported the ALJ's determination that E.A.W., had no limitations in the domain of "interacting and relating to others."[37]

As to the domain of "health and physical well-being," Plaintiff argued that E.A.W. had marked limitations in this domain because he had four to five appointments a month.[38] The Magistrate Judge found this argument unavailing because "[a]ppointments alone are insufficient to satisfy the regulations," and E.A.W.'s therapy treatments improved his functioning.[39] The Magistrate Judge noted that the opinion was issued nearly two years after Plaintiff's alleged onset date and more than one year after her date last insured.[40] Accordingly, the Magistrate Judge found that the ALJ's assessment of these domains was supported by substantial evidence.[41]

## II. Objections

### A. *Plaintiff's Objections*

Plaintiff timely filed objections to the Magistrate Judge's Report and Recommendation.[42] Plaintiff argues that the Magistrate Judge erred in stating that the Early Steps evaluation did not find that E.A.W. was developmentally delayed.[43] Plaintiff asserts that the Early Steps testing found

---

[36] *Id*. at 8.

[37] *Id*.

[38] *Id*.

[39] *Id*. at 9.

[40] *Id*.

[41] *Id*.

[42] Rec. Doc. 22.

[43] Rec. Doc. 22-1 at 1.

6

that E.A.W. was significantly developmentally delayed in his adaptive and motor domains, and that his social standard score was 65.[44] Furthermore, Plaintiff contends that the Early Steps testing determined that E.A.W. was developmentally delayed in adaptive, communication and cognitive skills.[45] Plaintiff asserts that E.A.W. was "born premature, suffered two interventricular hemorrhages which caused developmental delays and continues to receive bi-weekly therapy sessions and other treatment."[46] Plaintiff contends that the ALJ was required to consider all impairment and evaluate whether the impairment is severe or not.[47] Plaintiff argues that the ALJ erred by failing to assess E.A.W.'s developmental delay as a serious impairment.[48] Furthermore, Plaintiff asserts that the ALJ erred in failing to find that E.A.W. had marked impairments in the domains of "interacting and relating to others" and "health and physical well-being."[49] For these reasons, Plaintiff contends that the Magistrate Judge's recommendation should be rejected and the decision of the ALJ should be reversed.[50]

## B.     *The Commissioner's Response*

The Commissioner did not file a brief in opposition to Plaintiff's objections despite receiving electronic notice of the filing.

---

[44] *Id.* (citing Adm. Rec. at 566–69).

[45] *Id*.

[46] *Id*. at 2.

[47] *Id*.

[48] *Id*.

[49] *Id*.

[50] *Id*. at 1.

7

### III. Standard of Review

*A.     Review of the Magistrate Judge's Report and Recommendation*

In accordance with Local Rule 73.2, this case was referred to a Magistrate Judge to provide a Report and Recommendation. A district judge "may accept, reject, or modify the recommended disposition" of a magistrate judge on a dispositive matter.[51] The district judge must "determine *de novo* any part of the [Report and Recommendation] that has been properly objected to."[52] A district court's review is limited to plain error of parts of the report which are not properly objected to.[53]

*B.     Standard of Review of Commissioner's Final Decision on SSI Benefits*

Under 42 U.S.C. § 405(g) the district court has the power to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."[54] Appellate review of the Commissioner's denial of SSI benefits is limited to determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence.[55] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[56] The Court must review the

---

[51] Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

[52] *Id.*

[53] *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending time to file objections from ten to fourteen days).

[54] 42 U.S.C. § 405(g).

[55] *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Waters v. Barnhart*, 276 F.3d 716, 716 (5th Cir. 2002); *Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir. 2000); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).

[56] *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Perez*, 415 F.3d at 461; *Loza*, 219 F.3d at 393; *Villa*, 895 F.2d at 1021–22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983); *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992)).

whole record to determine if such evidence exists.[57] However, the district court cannot "reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the Commissioner's."[58] The ALJ is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible.[59] A court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history."[60]

## IV. Law and Analysis

### A. *Law Applicable to Qualification for SSI for Children Under Age 18*

For a child under the age of 18, the Act defines disability as "a medically determinable physical or mental impairment which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[61] "For a child to be disabled under the meaning of the Act, the child must: (1) not be engaged in substantial gainful activity; (2) have an impairment

---

[57] *Singletary v. Bowen*, 798 F.2d 818, 822–23 (5th Cir. 1986).

[58] *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

[59] *See Arkansas v. Oklahoma*, 503 U.S. 91 (1992).

[60] *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).

[61] 42 U.S.C. § 1382c(a)(3)(C)(i).

9

that is 'severe'; and (3) have an impairment that 'meets, medically equals, or functionally equals' the impairments listed in the disability regulations."[62]

In the instant case, the ALJ found that E.A.W. satisfied the first two steps of this analysis as he has not engaged in substantial gainful activity since April 3, 2015, the application date, and he had the following severe impairments: "status post hydrocephaly with shunt repair, estropia with surgical correction, status post low birth weight (resolved)."[63] The ALJ also noted that E.A.W. experienced transitory conditions including diaper rash and anemia, but that these conditions did not result in more than minimal functional limitations and were therefore "non-severe."[64] The ALJ also found that while E.A.W. had a seizure on one occasion there was no objective testing to confirm the presence of a seizure disorder and no diagnosis of a seizure disorder was made.[65] At step three, the ALJ held that E.A.W. does not have an impairment or combination of impairments that meets or medically equals the severity of the impairment listed at 20 C.F.R. § 404. Supbpt. P., Appendix 1.[66]

In determining whether an impairment or combination of impairments functionally equals the listing, the ALJ must "assess the interactive and cumulative effects of all of the impairments for which we have evidence, including any impairments [] that are not 'severe.'"[67] In making this

---

[62] *Richard ex rel. Z.N.F. v. Astrue*, 480 F. App'x 773, 776 (5th Cir. 2012) (citing 20 C.F.R. § 416.924(a)-(d)).

[63] Adm. Rec. at 13.

[64] *Id*.

[65] *Id*.

[66] *Id.*

[67] *See* 20 C.F.R. § 416.926a(a).

10

determination, the ALJ must consider the child's functioning in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being.[68] To functionally equal a listing, a child must have an impairment or combination of impairments that result in "marked" limitations in two domains of functioning, or an "extreme"[69] limitation in one domain of functioning.[70]

A "marked" limitation interferes "seriously" with the "ability to independently initiate, sustain, or complete activities."[71] A limitation will be considered "marked" if standardized testing scores are at least two, but less than three, standard deviations below the mean, or for children under the age of three years old where the child is "functioning at a level that is more than one-half but not more than two-thirds of [the child's] chronological age."[72] An "extreme" limitation interferes "very seriously" with the "ability to independently initiate, sustain, or complete activities."[73] A limitation will be considered "extreme" if standardized testing scores are at least

---

[68] *See* 20 C.F.R. § 416.926a(b)(1).

[69] An "extreme" limitation interferes "very seriously" with the ability to independently initiate, sustain, or complete activities. A child's day-to-day functioning may be very seriously limited when his impairment(s) limits only one activity or when the interactive and cumulative effects of his impairments(s) limit several activities. 20 C.F.R. § 416.926a(e)(3).

[70] *See* 20 C.F.R. § 416.926a(d).

[71] 20 C.F.R. § 416.926a(e)(2)(i).

[72] 20 C.F.R. § 416.926a(e)(2)(i)–(ii).

[73] 20 C.F.R. § 416.926a(e)(3)(i).

three standard deviations below the mean, or for children under the age of three years old where the child is "functioning at a level that is one-half of [the child's] chronological age or less."[74]

In this case, the ALJ found that E.A.W. had no limitations in the first five domains, and a "less than marked" limitation in the "health and physical well-being" domain.[75] Therefore, the ALJ concluded that E.A.W. was not disabled as defined by the Act.[76] The Court may disturb that finding only if the ALJ lacked "substantial evidence" to support it.[77]

*B.    Analysis*

Plaintiff argues that the Magistrate Judge erred in stating that the Early Steps evaluation did not find that E.A.W. was developmentally delayed.[78] Plaintiff argues that the Early Steps evaluation shows that E.A.W. had developmental delays, and the ALJ erred by failing to assess E.A.W.'s developmental delay as a serious impairment.[79] Furthermore, Plaintiff asserts that the ALJ erred in failing to find that E.A.W. had marked impairments in the domains of "interacting and relating to others" and "health and physical well-being."[80] Accordingly, the Court will address each of these issues in turn.

---

[74] 20 C.F.R. § 416.926a(e)(3)(i)–(ii).

[75] Adm. Rec. at 19–25.

[76] *Id.* at 25.

[77] *See Perez*, 415 F.3d at 461

[78] Rec. Doc. 22-1 at 1.

[79] *Id*. at 1–2.

[80] *Id*.

12

**1. Did the ALJ err by failing to assess E.A.W.'s developmental delay as a serious impairment?**

At page five of the Report and Recommendation, the Magistrate Judge stated that the Early Steps and Developmental Clinic's evaluation of E.A.W. "does not indicate that E.A.W. was developmentally delayed."[81] Therefore, the Magistrate Judge concluded that "there is no evidence in the record to support the finding" that E.A.W. suffers from developmental delay.[82] In support of this assertion, the Magistrate Judge cited a checklist report completed by Early Steps on May 28, 2015.[83] The report states that the "eligibility team agrees by indication below that the child is eligible and in need of early intervention."[84] In response, the eligibility team checked "yes" and indicated that E.A.W. was in need of early intervention for a medical diagnosis of "intraventricular hemorrhage/prematurity."[85] The report has a section for "developmental delay," but this portion is not marked on E.A.W.'s eligibility form.[86] Therefore, this form appears to suggest that E.A.W. was eligible for early intervention due to his medical diagnosis of "intraventricular hemorrhage/prematurity" not due to a developmental delay.[87]

---

[81] Rec. Doc. 19 at 5 (citing Adm. Rec. at 563).

[82] *Id.*

[83] *Id.*

[84] Adm. Rec. at 563.

[85] *Id.*

[86] *Id.*

[87] *Id.*

However, the "Early Steps Report for IFSP and Program Planning" completed by Evaluator Helen DeMoss on May 28, 2015, suggests that a developmental delay was found.[88] Specifically, the report states that E.A.W. "demonstrated delays in his adaptive and motor domains" in the Battelle Developmental Inventory-2 ("BDI-2") examination administered on May 28, 2015.[89] The report states that E.A.W.'s social standard score was 65, which is "in the range of significant developmental delay."[90] Furthermore, the evaluation revealed a "mild developmental delay" in the areas of adaptive, communication and cognitive skills.[91] Therefore, because portions of the Early Steps records do indicate that E.A.W. was developmentally delayed, the Court will sustain Plaintiff's objection and reject the Report and Recommendation to the extent it states that "there is no evidence in the record to support the finding" that E.A.W. suffers from developmental delay.[92]

Nevertheless, a review of the ALJ's opinion reveals that although he did not find that E.A.W.'s developmental delay was a severe impairment, the ALJ did thoroughly consider the Early Steps evaluation.[93] The ALJ's opinion notes that the BDI-2 evaluation was administered by Early Steps on May 28, 2015.[94] The ALJ's opinion notes the following findings from the BDI-2

---

[88] *Id.* at 567.

[89] Adm. Rec. at 567.

[90] *Id.*

[91] *Id*.

[92] Rec. Doc. 19 at 5.

[93] Adm. Rec. at 11–26.

[94] *Id.* at 16.

14

evaluation: (1) motor skills were in the low average range; (2) adaptive, communication, and cognitive skills were in the range of mild developmental delay; (3) social skills were in the range of significant developmental delay (2.33 standard deviations below the mean).[95]

Plaintiff argues that the ALJ erred in failing to find that E.A.W.'s developmental delay was a serious impairment. However, even assuming that the ALJ should have found that the developmental delay was a severe impairment, this error alone does not demand reversal of the ALJ's decision. As the Fifth Circuit has explained, when an ALJ proceeds to subsequent steps of the sequential evaluation analysis and denies benefits on that basis, any alleged error in not finding a specific impairment severe is harmless.[96] In *Dise v. Colvin*, the ALJ found that the plaintiff suffered from a severe mental impairment of oppositional defiant disorder.[97] On appeal, the plaintiff argued that the ALJ erred in failing to address whether the plaintiff's depression was also a severe impairment.[98] The Fifth Circuit found that this argument was meritless because "[t]he remainder of the opinion clearly reflects that the ALJ considered all of [the plaintiff's] claimed impairments (including depression) in his assessment of [the plaintiff's] disability, even though he only mentioned ODD at step two. In short, 'this case did not turn on whether or not [the plaintiff's depression] impairment was severe,' but on subsequent steps in the analysis."[99]

---

[95] *Id.*

[96] *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987); *Dise v. Colvin*, 630 F. App'x. 322, 324 (5th Cir. 2015) (per curiam).

[97] *Dise*, 630 F. App'x. at 326.

[98] *Id.*

[99] *Id.* (quoting *Chaparro v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987)).

Like in *Dise*, here, the ALJ's opinion clearly reflects that the ALJ considered all of E.A.W.'s claimed impairments, including developmental delays, in his assessment of E.A.W.'s disability. The ALJ's determination did not turn on whether E.A.W.'s developmental delays were severe but on subsequent steps in the analysis. Specifically, the ALJ determined that E.A.W. was not disabled at step three because E.A.W. did not have marked or extreme limitations in the six domains used to assess a child's functioning. Therefore, Plaintiff's argument that the ALJ's opinion should be reversed on this basis is without merit.

2. **Did the ALJ err in failing to find that E.A.W. had marked impairments in the domains of "interacting and relating to others" and "health and physical well-being"?**

Next, Plaintiff argues that the ALJ erred in failing to find that E.A.W. had marked impairments in the domains of "interacting and relating to others" and "health and physical well-being."[100] The domain of interacting and relating with others requires assessment of how well a child is able to initiate and sustain emotional connections with others; develop and use language; cooperate with others; comply with rules; respond to criticism; and take care of the possessions of others.[101] Newborns and young infants should visually and vocally respond to caregivers, develop speech vowel and consonant sounds, and respond to a variety of emotions.[102] Older infants should begin to separate from caregivers, express emotions, and respond to others.[103]

---

[100] Rec. Doc. 22-1 at 1–2.

[101] 20 C.F.R. § 416.926a(i).

[102] 20 C.F.R. § 416.926a(i)(2)(i).

[103] 20 C.F.R. § 416.926a(i)(2)(ii).

16

Plaintiff bases the argument that E.A.W. has marked limitation in this domain on testing performed by Early Steps on May 28, 2015, when E.A.W. was three months old, which indicated that his social/emotional behavior was 2.33 standard deviations below the mean.[104] The regulations provide that a limitation will be considered "marked" if standardized testing scores are at least two, but less than three, standard deviations below the mean, or for children under the age of three years old where the child is "functioning at a level that is more than one-half but not more than two-thirds of [the child's] chronological age."[105]

However, later medical records reveal that E.A.W.'s social interactions improved. As noted by the ALJ, the state agency medical consultant who reviewed the evidence determined that E.A.W. had no limitations in this domain.[106] Furthermore, during a well-child visit on January 15, 2016, E.A.W.'s father reported that E.A.W. cooed interactively,[107] and on February 4, 2016, E.A.W.'s father noted that E.A.W. was alert and interactive with feedings.[108] Physicians at the Children's Hospital Medical Practice also reported on numerous visits that E.A.W. presented appropriate behavior for his age and did not exhibit barriers to learning.[109] Therefore, substantial evidence supported the ALJ's determination that E.A.W. had no limitation in the domain of "interacting and relating to others."

---

[104] Adm. Rec. at 385.

[105] 20 C.F.R. § 416.926a(e)(2)(i)–(ii).

[106] Adm. Rec. at 22, 73.

[107] *Id.* at 635.

[108] *Id.* at 628.

[109] *Id.* at 625, 630–31, 634, 637–38.

17

As to the domain of "health and physical well-being," Plaintiff argues that E.A.W. had marked limitations in this domain because he had four to five appointments a month.[110] The domain of "health and physical well-being" requires assessment of "the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on [the child's] functioning."[111] The regulations provide that a child may have "marked" limitation if he or she is "frequently ill because of [their] impairment(s) or have frequent exacerbations of [their] impairment(s) that result in significant, documented symptoms or signs."[112] The regulations define frequent as "episodes of illness or exacerbations that occur on an average of 3 times a year, or once every 4 months, each lasting 2 weeks or more."[113] Alternatively, the regulations provide that an ALJ may find a "marked" limitation if the child has "episodes that occur more often than 3 times in a year or once every 4 months but do not last for 2 weeks, or occur less often than an average of 3 times a year or once every 4 months but last longer than 2 weeks, if the overall effect (based on the length of the episode(s) or its frequency) is equivalent in severity."[114]

In examining this domain, the ALJ noted that E.A.W. was born prematurely with low birth weight, which had resolved.[115] The ALJ noted E.A.W. required a shunt placement for

---

[110] Rec. Doc. 16 at 2–3.

[111] 20 C.F.R. § 416.926a(l).

[112] 20 C.F.R. § 416.926a(e)(2)(iv).

[113] *Id.*

[114] *Id.*

[115] Adm. Rec. at 24.

hydrocephaly, and he underwent an eye surgery to correct his estropia on February 8, 2016.[116] The ALJ also noted that on March 3, 2016, E.A.W.'s pediatrician described a physical examination as normal and discussed introducing more meat into E.A.W.'s diet to help with anemia.[117] Finally, the ALJ noted that on March 7, 2016, the Early Steps therapist reported that E.A.W. was beginning to focus and progress much more since his eye surgery.[118] Therefore, the ALJ concluded that E.A.W.'s limitations were less than marked in this domain.[119]

The fact that E.A.W. had four to five appointments a month is alone insufficient to satisfy the regulations. Plaintiff does not point to evidence showing that E.A.W. experienced episodes or exacerbations of an illness frequently as described by the regulations. Furthermore, as noted by the ALJ, the medical records suggest that E.A.W.'s condition was improving. Therefore, substantial evidence supported the ALJ's determination that E.A.W. had less than marked limitations in the domain of "health and physical well-being."

## V. Conclusion

Because portions of the Early Steps records indicate that E.A.W. was developmentally delayed, the Court will sustain Plaintiff's objection and reject the Report and Recommendation to the extent it states that "there is no evidence in the record to support the finding" that E.A.W. suffers from developmental delay. However, Plaintiff's argument that the ALJ's opinion should be reversed because the ALJ did not find that the developmental delay was a severe impairment is

---

[116] *Id.*

[117] *Id.*

[118] *Id.*

[119] *Id.* at 25.

19

without merit. The ALJ's opinion clearly reflects that the ALJ considered all of E.A.W.'s claimed impairments, including developmental delays, in his assessment of E.A.W.'s disability. Furthermore, substantial evidence supported the ALJ's determination that E.A.W. had no limitation in the domain of "interacting and relating to others" and less than marked limitations in the domain of "health and physical well-being. Accordingly,

**IT IS HEREBY ORDERED** that the Court **SUSTAINS** Plaintiff's objections in part and **REJECTS** the finding on page five of the Report and Recommendation, which states that "there is no evidence in the record to support the finding" that E.A.W. suffers from developmental delay. The Court **ADOPTS** the Report and Recommendation in all other respects.

**IT IS FURTHER ORDERED** that the ALJ's decision denying Plaintiff's application for benefits on behalf of E.A.W. is **AFFIRMED** and this case is **DISMISSED WITH PREJUDICE.**

**NEW ORLEANS, LOUISIANA,** this  14th  day of January, 2019.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**